**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Randall Nunley, D.D.S., | ) | No. 06-2626-PHX-MHM |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Berkshire Life Insurance Company of America, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Currently before the Court is Berkshire Life Insurance Company of America's ("Berkshire") Motion for Summary Judgment (Dkt.#76) and Dr. Randall Nunley's ("Dr. Nunley") Cross-Motion for Summary Adjudication on Breach of Contract (Dkt.#115). After reviewing these motions, responses, replies, statements of fact, and attached exhibits, the Court issues the following order

**I.    Factual Background**

Dr. Nunley filed a complaint alleging breach of contract, bad faith, and emotional distress. Dr. Nunley was a dentist who was injured in September 2004. He alleged that he was totally unable to engage in his occupation by February 2004. According to his complaint, Berkshire breached the insurance contract as well as its duty of good faith and fair dealing by unreasonably denying and witholding insurance benefits due under the policy, by unreasonably delaying payment of benefits, and by creating oppressive burdens for the payment of benefits.

1   Berkshire seeks summary judgment on the basis that since it has already paid Dr.

2   Nunley for benefits, the breach of contract claim must be based on their delay in payment.

3   However, Berkshire claims that since Dr. Nunley did not provide the last piece of financial

4   information in January 2008, it was incapable of determining when benefits would begin to

5   be payable or how much was payable.  Since it never denied Dr. Nunley's claim and lacked

6   required information to calculate the claim , Berkshire argues that at most, their behavior was

7   negligent and cannot be the basis of a bad faith claim as a matter of law.  Moreover, if it is

8   not liable for bad faith, it cannot be liable for punitive damages.  (Dkt. #76)

9   Dr. Nunley, in turn, cross-moves for summary judgment on the breach of contract

10   claim by arguing that Berkshire's retroactive payment constitutes an admission that breach

11   occurred.  He argues that the payment is evidence that the loss was covered and that

12   Berkshire knew it was covered.  He further argues that unreasonable delay in payment is

13   grounds for a finding that Berkshire acted in bad faith.  He argues that Berkshire had "ample

14   objective evidence to issue payment as early as May of 2005" and that it acted with a

15   conscious disregard to Dr. Nunley's financial situation, which provides a basis for punitive

16   damages.  (Dkt. #82 at 14)  Therefore, Dr. Nunley appears to allege that he was denied

17   payment from May 2005 until March 23, 2008.  (Dkt.#82 at 11,14)

18   **II.    Summary Judgment Standard**

19   Summary judgment is appropriate when there is no genuine issue of material fact and

20   the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56©.  In

21   analyzing the motions for summary judgment, the Court views the evidence in the light most

22   favorable to the nonmoving party.  *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1935

23   (9th Cir. 2007).  "Summary judgment is inappropriate if a reasonable juror, drawing all

24   inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's

25   favor.  *James River Ins. Co. v. Herbert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

26   Here, summary judgment is inappropriate because the question of whether Berkshire

27   acted reasonably in delaying payment to Dr. Nunley for three years is a question of fact for

28

the jury.  The parties dispute whether the delay was caused by Berkshire's bad faith or whether it was caused by a good-faith lack of sufficient information to make the payment.

**III.     Undisputed Facts**

The undisputed facts are as follows: Dr. Nunley, a dentist, purchased disability insurance from Berkshire and a policy (no. Z0432650) was issued on November 20, 2003. The Policy provided a $10,000 monthly benefit if Dr. Nunley met the terms and conditions for total disability.  The Policy also contained a Residual Disability Rider which essentially provided a proportionate amount of monthly benefit (based on loss of monthly income) if Dr. Nunley worked, and was not totally disabled, but suffered a loss of income because of the sickness or injury.  In January 2005, Berkshire was notified by Dr. Nunley's insurance agent that he was making a claim for benefits.  (Dkt.#s 77, 114)  Berkshire received the claim for benefits on April 1, 2005.  Dr. Nunley reported that he began having pain and stiffness in his left forearm on September 13, 2004 and as a result reduced his work schedule from 40 hours a week to 20.  Additionally, while having the problems with his left arm, Dr. Nunley went skiing in February 2005 and injured his right thumb, which required surgery.  Dr. Nunley claimed he became totally disabled on February 14, 2005.  His surgeon, Dr. Dinowitz, noted prognosis for return to work was three to six months.

**IV.     Disputed Facts**

However, what happened next appears to be in dispute.  According to Dr. Nunley, "it was not until this lawsuit was filed, which was more than 18 months after Dr. Nunley submitted his claim to Berkshire, that Berkshire requested the "additional information" that it supposedly needed to evaluate Dr. Nunley's claim.  (Dkt.#83 ¶ 84).  However, Berkshire disputes this statement, and claims that "it had been requesting information from Dr. Nunley throughout the claim handling process and Berkshire's requests had gone unanswered.  (Dkt. #125 at ¶ 84)  Berkshire claims that "it could not pay Dr. Nunley until the elimination period and residual disability benefit amount were calculated under the terms of the Policy and Rider, and Berkshire could not make those calculations until it received the necessary information – all of which was in Dr. Nunley's possession."  (Dkt. # 125 ¶ 35)  According

to Berkshire, payment was made to Dr. Nunley as timely as possible based on the date the requisite information was received from Dr. Nunley." (*Id.*)  One Berkshire employee testified that the earliest that Dr. Nunley's benefits calculation could have been made was February 2008. (*Id.*)

However, Dr. Nunley cites the deposition testimony of another Berkshire employee, Ms. Reagan, who agreed that as early as August 2005, there was a period of total disability with regard to Dr. Nunley's thumb injury and she knew that Dr. Nunley was unable to practice dentistry.  However, because she was unsure when the period of total disability ended and the period of partial disability began, she refused to pay anything until March 28, 2008. (Dkt. #83 ¶ 40) Instead, she ordered surveillance on Dr. Nunley for reasons that were never documented in the claim file. (Dkt. # 83 ¶¶ 41-42) Dr. Nunley stated that he contacted Berkshire on several occasions to express his frustration with the delay in payment and to inform them that he was experiencing financial difficulties and had virtually no income since February 2005. (Dkt. #83 at ¶ 44)  He explained that he was not in possession of any business tax returns since he had sold his practice. However, Berkshire once again requested his business tax returns in September 1, 2005. (Dkt. # 83 ¶ 44) According to Dr. Nunley, by December 30, 2005, Berkshire had done the following: obtained medical records; ordered a medical review; conducted surveillance twice; requested additional medical records and tax returns; obtained employer statements, operatory schedules, and appointment books; held teleconferences with Dr. Nunley's treating physician and surgeon; conducted a field investigation; and consulted underwriting. (Dkt. # 83 ¶ 53) However, it still refused to pay or deny Dr. Nunley's claim.  (*Id.*)  While Berkshire does not dispute that it did these things, it "notes that as of December 30, 2005, it still did not have the requisite information to calculate either the elimination period or the amount of Dr. Nunley's residual benefit." (Dkt. #125 ¶ 53)

As the above paragraphs demonstrate, even basic facts such as whether Berkshire in fact requested additional information that Dr. Nunley did not provide in the period from September 2006 to January 2008 are disputed.  Also disputed is whether Berkshire needed

1  the additional information to determine that the loss was covered by the policy.  As such, it

2  is inappropriate to decide this case at summary judgment.

3        There are other problems with both motions as well.  For example, Berkshire

4  mistakenly asserts that Dr. Nunley did not controvert any statement of fact set forth in

5  Berkshire's Statement of Facts in Support of its Motion for Summary Judgment and argues

6  that all of the facts set forth are deemed admitted; however, Dr. Nunley controverted many

7  statements in Berkshire's Statement of Facts.  (Dkt. #114)  In addition, Dr. Nunley's

8  argument that Berkshire's eventual partial payment of the claim is an admission that the

9  claim was covered does not address whether Berkshire had sufficient information to pay the

10  claim sooner than it did.  It appears that even if the loss was covered, Berkshire had no

11  obligation to make payments unless and until Dr. Nunley presented sufficient proof of the

12  loss.

13        Because there are disputed issues of material fact, Berkshire's motion for summary

14  judgment is denied. (Dkt.#76)  For similar reasons, Dr. Nunley's cross motion for summary

15  judgment as to breach of contract is likewise denied.  (Dkt.#115)

16        **Accordingly,**

17        **IT IS HEREBY ORDERED DENYING** Berkshire's motion for summary judgment

18  and Dr. Nunley's cross-motion for summary judgment.  (Dkt.#s 76, 115)

19        **IT IS FURTHER ORDERED** setting this matter for a status hearing on April 6,

20  2009 at 3:30 PM to set a firm trial date.

21        DATED this 1st day of March, 2009.

22

23

24  _____
               Mary H. Murguia

25            United States District Judge

26

27

28